JAMES E. JOYNER, APPELLANT, V. DONALD R. STEENSON, APPELLEE.

420 N.W.2d 278

Filed March 11, 1988.   No. 86-270.

Michael L. Getty, for appellant.

John M. Burns of Schmid, Ford, Mooney & Frederick, P.C., for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and BLUE, D.J.

WHITE, J.

This case arises out of a two-vehicle accident which occurred on May 17, 1980, in Omaha, Nebraska, near the intersection of 97th and Q Streets. Plaintiff-appellant, James E. Joyner, was traveling westbound on Q Street. He testified that as he neared 97th Street, he noticed a car behind him that had been tailgating him for "quite a ways." Joyner stopped at the intersection, and

his vehicle was struck from behind by the vehicle driven by Donald R. Steenson. Joyner sued Steenson, alleging negligence and that as a result of the accident he suffered spinal injuries, continued pain, headaches, and numbness in his extremities.

In his answer to plaintiff's petition, Steenson admitted that he was negligent in the operation of his vehicle and that his negligence was the sole proximate cause of the accident. However, at trial the defendant introduced evidence that would tend to prove that the accident was not the cause of Joyner's medical problems. Steenson asserted that plaintiff's alleged injuries were actually preexisting conditions with no causal connection to the car accident.

After a jury trial, the jury returned a verdict in favor of the defendant. Plaintiff timely filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict. That motion was overruled, and this appeal followed.

Appellant's assigned errors can be summarized as follows: (1) The jury verdict was clearly wrong because it was not supported by any credible evidence; (2) the overwhelming weight of the evidence favored plaintiff, but the jury disregarded that evidence; and (3) the trial court erred in refusing to set aside the jury verdict.

In determining the sufficiency of the evidence to sustain a verdict, it must be considered most favorably to the successful party and every controverted fact resolved in such party's favor, giving the benefit of inferences reasonably deducible from it. *Bell v. Williams Care Center*, 226 Neb. 1, 409 N.W.2d 294 (1987). A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is any competent evidence presented to the jury upon which it could find for the successful party. *Id.*

Plaintiff, Joyner, testified that the evening of the accident he did not feel like he was injured and continued on to a party, as he had planned. He stated that he had continuing aches and pains that summer, but had attributed that to his sports activities, his teaching job, and his work as an electrician. The evidence is somewhat conflicting as to when Joyner first sought medical assistance for any pain relating to the accident. He had been to Ehrling Bergquist USAF Regional Hospital at Offutt Air Force Base on May 21, August 13, and August 21, 1980,

and apparently made no mention of the accident or injuries therefrom. Joyner did report the accident to Dr. Margules, a neurological surgeon, on December 9, 1980, and informed the doctor that he had been having back pain and numbness since July of 1980.

Plaintiff introduced expert medical testimony from three physicians. The two treating physicians testified, by deposition, that the May 17, 1980, accident either caused or could have caused the injuries they noted in the plaintiff's spine. The third physician testified that trauma could have caused the spinal fusion plaguing Joyner, but that there was no real way of telling the actual cause.

The experts' deposition testimony indicated that plaintiff's condition and symptoms could have been caused by other factors also. Among these factors were infection, arthritis, and disk degeneration caused by aging. There was no evidence of a history of infection that may have led to Joyner's condition. However, Dr. Rassekh testified that Joyner's osteophyte problem was caused by disk degeneration and aging. Dr. Margules, plaintiff's treating physician, testified that the fusion process seen in Joyner's neck may have been going on for 10 to 15 years. He stated that complete fusion in just a 4-year timespan is unusual.

Defendant introduced evidence relating to the past medical history of Joyner. The purpose of this evidence was to show that plaintiff had been experiencing the same or similar medical problems before the accident occurred. In fact, the plaintiff testified that he had experienced back problems after a car accident in 1967. These problems, he stated, were resolved by a chiropractor.

Joyner's medical records introduced by defendant covered a period from 1974 to 1978. These records indicate that during that time period plaintiff had consulted physicians regarding chest pains, stomach problems, and severe pain in his right shoulder. He had been diagnosed as having a hiatal hernia, bursitis in the right shoulder, and diabetes. His past history listed the prior cervical spine injury.

On cross-examination defendant's counsel read the following question from interrogatories submitted to plaintiff:

"State the injuries you claim to have sustained as a result of the accident which is the subject matter of this action." The answer, read to the jury by the plaintiff, stated:

Very uncomfortable and alarming tingling sensation from right shoulder to right hand. Like sensation of the feet — recurrence of short duration. A nagging discomfort throughout the back between the shoulders and lower neck. More nervous and high-strung and have lost some control of penmanship. Have (recurring) jolting headaches that were not experienced prior to the accident, and have had total blackout.

Appellant argues that the expert testimony clearly established that the May 17, 1980, accident caused his recent medical complications and that the testimony was wholly uncontradicted. He asserts that the other possibilities raised by the defendant as to causation were rejected by the expert witnesses. In essence, appellant would have this court treat the expert witnesses' testimony as conclusive as to causation. This is simply not the law. Triers of fact are not required to take the opinions of experts as binding upon them. *Mulder v. Minnesota Mining & Mfg. Co.*, 219 Neb. 241, 361 N.W.2d 572 (1985); *Cathcart v. Blacketer*, 217 Neb. 755, 351 N.W.2d 70 (1984).

Defendant introduced medical records in evidence that could have led the jury to believe that Joyner's medical condition was a preexisting problem. Although defendant's evidence was not extensive, this is not a contest where winning is measured by the volume of evidence introduced. It is for the jury, as trier of the facts, to resolve conflicts in the evidence and to determine the weight and credibility to be given to the testimony of the witnesses. *Bay v. House*, 226 Neb. 521, 412 N.W.2d 466 (1987).

Given the fact that Joyner apparently did not report the accident to a physician for nearly 7 months, that he had a prior history of back problems, and that he had prior complaints of pain in the right shoulder, the jury could reasonably have concluded that the accident did not cause his problems. At least some competent evidence existed to support the jury's verdict, and, as such, this court cannot reweigh those facts to reach a contrary conclusion.

770

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.